CADES SCHUTTE LLP

JEFFREY S. PORTNOY          1211-0
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
Email:  jportnoy@cades.com

JONATHAN D. MILLER (Cal. Bar No. 220848)
jonathan@nshmlaw.com
*(Pro Hac Vice Pending)*

NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California  93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

Attorneys for Plaintiff, SHERYLYNN STRONG

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERYLYNN STRONG,<br><br>Plaintiff,<br><br>v.<br><br>RYAN D. MCCARTHY, Secretary of the United States Army; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**FIRST AMENDED COMPLAINT**<br><br>1.   Violations of Section 504 of the Rehabilitation Act<br>2. Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 8116.<br><br>TRIAL DATE:      None set |

Plaintiff Sherylynn Strong ("Plaintiff"), by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1.     Plaintiff Sherylynn Strong is a deaf individual who communicates in American Sign Language ("ASL"), which is her expressed, preferred, and most

effective means of communication. Plaintiff sought medical care at Tripler Army Medical Center ("Tripler") in Honolulu, Hawaii, on over 10 occasions in the past two years for various emergency and non-emergency issues. At these appointments, Plaintiff repeatedly requested an ASL interpreter. Despite Tripler's documented awareness of Plaintiff's disability, and Plaintiff's pre-appointment request for an interpreter at all non-emergency appointments, Tripler denied her an interpreter at over ten appointments. In fact, it has been over two years of Plaintiff seeking treatment with Tripler, and they have failed to provide an interpreter at any appointment.

2.     Plaintiff had trouble explaining her symptoms, understanding her treatment plans, and having discussions with medical staff. She did not receive appropriate treatment due to the inability to effectively communicate. Further, the unavailability of an interpreter prevented Plaintiff from participating effectively in her medical care, and, in multiple instances, in the emergency and non-emergency care for her young children.

3.     During her multiple medical treatments at Tripler, Tripler discriminated against Plaintiff by failing and/or refusing to provide auxiliary aids and services, and by requiring Plaintiff to rely upon other means of communication that are inadequate to provide equal opportunity to participate in and benefit from Tripler's health care services free from discrimination. As a result, Plaintiff was unable to understand her medical condition or the treatment she received, nor was she able to seek appropriate care for her young children. Plaintiff seeks declaratory, injunctive, and equitable relief; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Section 1557 of the Affordable Care Act ("ACA").

4.     By failing to make its healthcare accessible to hearing impaired persons, Tripler, a public accommodation receiving federal funding, subject to

Rehabilitation Act and the ACA, deprives deaf and hearing-impaired individuals the full benefits of its health care services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that the Rehabilitation Act, the ACA, and the Army's Patient Bill of Rights, were meant to redress.

5.     Tripler has demonstrated through its interactions with Plaintiff that it has adopted a policy and/or pattern and practice of refusing to provide accessible healthcare services for its hearing-impaired patients, and that this decision, on information and belief, is based purely on financial considerations.

6.     Tripler has further demonstrated through its interactions with Plaintiff that its employees are not properly trained regarding the civil rights, communication needs, or how to interact with its hearing-impaired individuals.

7.     Tripler's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures and practices that deprive deaf and hearing-impaired individuals of the opportunity to be full partners in their receipt of health care services.

## **PARTIES**

8.     Plaintiff Sherylynn Strong was, at all relevant times hereto, a resident of Honolulu. In July 2020, after filing this complaint, Plaintiff moved to Virginia as her husband obtained a new assignment. Plaintiff maintains a residence in Honolulu, has immediate family in Hawaii, and intends to return to Hawaii several times a year while the family is stationed in Virginia.

9.     As described above, Plaintiff is deaf. Plaintiff lost her hearing at two years old and became fluent in ASL. Plaintiff is independent. She has been teaching ASL for over a decade, operating her own business teaching ASL with homeschoolers, offer private tutoring and programs, and Baby Signs program for parents/children. Plaintiff has also taught ASL classes in high school. Plaintiff's husband is a member of the United States military. Plaintiff, her husband, and their

young children treat at Tripler. Plaintiff communicates with her children using ASL.

10.    Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., the Rehabilitation Act, and the ACA.

11.    Defendant Ryan D. McCarthy, sued in his official capacity, is the Secretary of the Army. Defendant McCarthy is responsible for conducting the affairs of the United States Army and ensuring compliance with the laws governing the U.S. Army, including at Army-owned facilities, such as Tripler.

12.    Tripler Army Medical Center is a hospital owned, operated, and managed by the U.S. Army Medical Department. Tripler provides all levels of medical services for military personnel including their family and eligible veterans. Tripler's principal place of business is in Honolulu, Hawaii.

13.    Defendant's facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendant is, on information and belief, recipients of federal financial assistance. Thus, it is subject to the requirements of the Rehabilitation Act and the ACA.

14.    The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Demand to allege their true names and capacities when known. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

15.    Plaintiff alleges that Defendants, including Doe Defendants, and each of them at all times mentioned in this Demand were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Demand were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## JURISDICTION AND VENUE

4

16.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 2201 for Plaintiff's claims arising under federal law.

17.     Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business. Further, Tripler's principal place of business is in this judicial district.

18.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## FACTUAL BACKGROUND

**Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities**

19.     Plaintiff became deaf at two years old. As a result of her early hearing loss, Plaintiff became fluent in ASL.

20.     Plaintiff is a contributing member of society. She operates her own business teaching ASL to various individuals and groups, and also teaches ASL at several schools. Additionally, Plaintiff is a mother of young children, whom she communicates with using ASL.

21.     Plaintiff lived in the Honolulu area until July 2020, when her husband was transferred to Virginia. Plaintiff maintains a residence in Hawaii and her stepson lives in Hawaii. Plaintiff intends to return to Hawaii several times per year while her husband is stationed elsewhere to visit her stepson, with the goal of returning permanently in the future. Plaintiff's husband is in the Navy. They therefore utilize Tripler for their medical needs, both when they reside in Hawaii and when they return for visits. Plaintiff has treated at Tripler numerous times over the past several years for emergency and nonemergency purposes.

22.     One of the benefits for patients of utilizing military medical services, including Tripler, is a centralized care system. In Plaintiff's case, her file is marked as always requiring an ASL interpreter for her appointments.

23.     Despite Plaintiff's military medical file indicating she always requires

an ASL interpreter, it has been over two years of treating with Tripler, and Tripler has failed to provide an interpreter at any emergency or nonemergency appointment. The following is an example of the multiple appointments where Tripler denied Plaintiff an interpreter:

a.    On November 6, 2019, Plaintiff took her two-year-old daughter to the emergency room with a fever of 104 degrees. In this stressful emergency situation, it was critical that Plaintiff, as the mother, be able to communicate with hospital staff. However, there was no effective interpreter to allow Plaintiff this right the hospital provides hearing parents, leading to an incredibly stressful and chaotic situation.

b.    On November 5, 2019, Plaintiff presented for an ENT appointment. This appointment had been scheduled far in advance. However, the Friday before the appointment, Tripler notified Plaintiff there would be no interpreter present. On information and belief, Plaintiff underwent medical testing on this date and was treated and prescribed medication for her symptoms. Despite Plaintiff's chart documenting her need for an ASL interpreter, Defendants did not provide Plaintiff an interpreter on this date.

c.    On September 4, 2019, Plaintiff presented to Tripler. On information and belief, Plaintiff underwent medical testing on this date and was treated and prescribed medication for her symptoms. Despite Plaintiff's chart documenting her need for an ASL interpreter, Defendant did not provide Plaintiff an interpreter on this date.

d.    On August 14, 2019, Plaintiff presented to Tripler. On information and belief, Plaintiff underwent medical testing on this date and was treated and prescribed medication for her symptoms. Despite Plaintiff's chart documenting her need for an ASL interpreter, Defendant did not provide Plaintiff an interpreter on this date.

24.    During the course of Plaintiff's medical treatment, Defendant's nurses,

doctors, and other staff often attempted to communicate with Plaintiff by writing notes in English, which did not allow her to understand or effectively participate in her medical care.

25.    In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter. And, in the two years Plaintiff treated at Tripler, Defendant never had any effective ASL interpreter available for emergency visits.

26.    As a result of Defendant's failure to ensure effective communications with Plaintiff, and denial of auxiliary aid and services, she received services that were objective substandard, inaccessible, and inferior to those provided to those patients who are hearing and was subjected to discriminatory treatment because of her disability.

27.    Despite this difficulty, frustration, and unequal treatment, Plaintiff will seek Defendant's health care services in the future, whether by choice or necessity, due to her husband's service in the Navy, and their family medical coverage. Plaintiff plans to return to Defendant's facilities in the future, both when her family returns to Hawaii following her husband's service in Virginia, and in the interim, when she returns to Hawaii multiple times per year to visit her stepson and check on her residence. Plaintiff is deterred from returning to Tripler because of the discrimination she has faced and expects to face in the future, but, again, will be required to treat there because of her husband's military status and insurance. Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of accessibility standards.

## Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities.

28.    As the owner and manager of Tripler, Defendant employs centralized policies, practices, and procedures with regard to its agency-wide policy of availability of ASL interpreters at its emergency and non-emergency treatment

centers.

29.    Indeed, Defendant, as part of the Department of Defense, issues a

Patient Bill of Rights.[1] This policy, provides in relevant part:

> f. Participation in Treatment Decisions. Each MTF shall ensure that MHS beneficiaries have the right and opportunity to participate fully in all decisions related to their healthcare, subject to readiness requirements for ADSMs.
> (1) To the extent practical, MTFs shall:
> (a) Provide patients with easily understood information and the opportunity to decide among treatment options consistent with the informed consent process.
> (b) Provide patients with written and/or verbal information based on the patients preferred the way of receiving information.
> (c) Discuss all treatment options, including the option of no treatment at all with a patient in a culturally and linguistically sensitive manner.
> (d) Assess the patient's health literacy and ability to understand medical information based on the Health Literacy Screener in Tri-Service Workflow core forms in accordance with Reference (k).
> (e) **Ensure that patients with disabilities have effective communications with members of the health system in making such decision**
>
> …
>
> g. Respect and Nondiscrimination. Each MTF shall provide considerate, respectful care from all members of the MHS at all times and under all circumstances in an environment of mutual respect and free from discrimination. Subject to eligibility and other requirements of law and DoD regulations, including Chapter 55 of Reference (e), and Reference (f), **the MHS does not discriminate in the delivery of healthcare services or in information and enrollment practices based on** race, ethnicity, national origin, religion, sex, age, mental or **physical disability**, genetic information, sexual orientation, or source of payment.

[Emphasis added.]

30.    Despite this explicit recognition and policy of ensuring patients with

disabilities, such as Plaintiff, be able to effectively communicate and participate in

their health care decisions, Tripler has and continues to deny Plaintiff a required

ASL interpreter at any scheduled appointment and has never had an ASL interpreter

---

[1] The DOD Patient Bill of Rights may be found here: https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Access-to-Healthcare?type=Policies#RefFeed (last accessed November 20, 2019).

8

available for an emergency visit. This denies Plaintiff full and equal access to Defendant's facilities, in express violation of Defendant's own policies.

31.     As a result of Defendant's non-compliance with the Rehabilitation Act and the ACA, Plaintiff has been denied the benefit of full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, or accommodations, has been denied participation in and have been treated unequally by Defendant, and Defendant has failed to provide effective and accessible auxiliary aids or services that protect Plaintiff's privacy and independence.

32.     If Defendant's facility was accessible, i.e. if Defendant remediated the access barriers described above, Plaintiff could independently and privately utilize Defendant's health care services, and meaningfully participate in her health care treatment.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

### (Against all Defendants)

33.     Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

34.     Plaintiff is an individual with a disability protected by Section 504 of the Rehabilitation Act. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

35.     Defendant is a recipient of federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

36.     Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

37.    Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. § 84.52(a)(2)-(3).

38.    Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services, to individuals who are mobility-disabled and use wheelchairs. 45 C.F.R. § 84.52(b), (d).

39.    A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

40.    Defendant's provision of health care constitutes a program or activity receiving federal financial assistance and, as recipients, they are required to ensure that both they and their contractors comply with Section 504 of the Rehabilitation Act.

41.    Defendant has failed and is failing to meet their obligation to provide deaf individuals an equal opportunity to use and benefit from their health care programs and activities. In failing to provide deaf patients like Plaintiff with accessibility, Defendant has refused to provide the auxiliary aids and services necessary to provide such patients medical treatment in an equally effective and timely manner that protects their privacy and independence.

42.    Examples of Defendant's inaccessible communications listed in paragraph 23 above.

43.    Because Plaintiff and other deaf and hearing-impaired individuals cannot independently access the medical facility, they must either find and rely on third party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care altogether. Defendant's failure to communicate in an equally effective manner with hearing-

impaired patients puts their health at risk. This is especially pronounced in the failure to have ASL interpreters when Plaintiff, as her daughter's caregiver, cannot understand the critical information physicians are saying about her daughter's emergency medical treatment.

44.    As a result of Defendant's actions and omissions, Plaintiff and other deaf and hearing-impaired individuals have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendant's health care services. If there is no change in the status quo, Plaintiff and other deaf and hearing-impaired individuals will be denied their right to access and engage fully in the provision of their health care.

45.    Defendant's failure to meet its obligations to communicate with deaf and hearing-impaired patients in an effective manner constitutes an ongoing and continuous violation of the ADA and the Rehabilitation Act, and their implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and the Rehabilitation Act. Unless enjoined, Defendant's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

46.    Defendant's refusal to communicate with deaf and hearing-impaired patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other deaf and hearing-impaired individuals.

47.    Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

### [42 U.S.C. § 18116, Against all Defendants]

48.    Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

49.     Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, and affirmed as of June 12, 2020, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services (the "Department").

50.     Defendant participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. As a result, thereof, Defendant is a covered entity under Section 1557.

51.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.     Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants, and members of the public:

(1)    that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)    that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to

individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)    how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)    the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)    the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and,

(6)    how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.    That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of

13

individuals with disabilities ….." 28 C.F.R. § 35.160(b)(2) (emphasis added).

52.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide her with an appropriate ASL interpreter or other appropriate aids and auxiliary services that would allow Plaintiff to effectively access and participate in her medical treatment in the same as a hearing individual would be able to participate.

53.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

54.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

55.     Defendant's conduct constituted violations of Section 1557.

56.     Defendant's conduct constitutes ongoing and continued violations of Section 1557. Unless restrained from doing so, Defendant will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiff.

57.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

58.     As a direct and proximate result of the foregoing, Plaintiff suffered the

loss of a civil right and she suffered great mental anguish; and she will continue so to suffer for a long time in the future; and Plaintiff was otherwise injured and damaged.

59.    Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

a.    A declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that at the commencement of this action Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act;

b.    An injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

c.    An injunction ordering Defendant:

i.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

ii.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

iii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or

15

hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.    to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vi.    to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

vii.    to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and the Rehabilitation Act;

viii.    to train all their employees, staffs, and other agents on a regular basis about Defendant's policies regarding how to properly use VRI services (including how to set up the VRI system and how

to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

d.    An Award to Plaintiff of:

    i.    Reasonable costs and attorneys' fees pursuant to the Rehabilitation Act and the Affordable Care Act;

    iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

e.    An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders; and,

f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: October 13, 2020          CADES SCHUTTE LLP

By:    */s/ Jeffrey S. Portnoy*
      Jeffrey S. Portnoy

      Attorneys for Plaintiff SHERYLYNN STRONG

Dated: October 13, 2020          NYE, STIRLING, HALE & MILLER, LLP

By:  */s/ Jonathan D. Miller*
      Jonathan D. Miller, Esq.
      *(Pro Hac Vice Pending)*